UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LINDSAY M., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | No. 1:22-cv-01981-MPB-MG |
| ) | |
| MARTIN O'MALLEY Commissioner of the ) | |
| ) | |
| Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

In November 2019, Plaintiff Lindsay M. applied for disability insurance benefits ("DIB") and supplemental social income benefits ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of June 15, 2018. [Filing No. 9-4 at 2; Filing No. 11 at 2.] Her applications were initially denied on March 10, 2020, [Filing No. 9-4 at 9], and upon reconsideration on October 1, 2020, [Filing No. 9-4 at 39]. Administrative Law Judge Kevin Walker (the "ALJ") conducted a video hearing on November 19, 2021. [Filing No. 9-2 at 41.] The ALJ issued a decision on December 27, 2021, concluding that Lindsay M. was not entitled to receive benefits. [Filing No. 9-2 at 16.] The Appeals Council denied review on August 9, 2022. [Filing No. 9-2 at 5.] On October 7, 2020, Lindsay M. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The Court referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). [Filing No. 21.]

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

For the following reasons, the undersigned **RECOMMENDS** that the Court **REVERSE** and **REMAND** the decision of the ALJ for further proceedings.

# I.
## STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

---

[2] The regulations governing disability determinations for DIB under Title II and SSI under Title XVI are identical in virtually all relevant respects unless otherwise noted.

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Lindsay M. was 33 years old on the date of her alleged onset of disability. [Filing No. 9-2 at 32.] She has a high-school education. [Filing No. 9-2 at 33.] She previously worked as a nursing assistant and a housekeeper/cleaner. [Filing No. 9-2 at 32.] Lindsay M.'s original application alleges that she can no longer work because of idiopathic intracranial hypertension ("IIH"), major depressive disorder, anxiety disorder, posttraumatic stress disorder (PTSD), personality disorder, panic disorder with agoraphobia, and obesity.[3] [Filing No. 11 at 2.]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Lindsay M. was not disabled. [Filing No. 9-2 at 24.] Specifically, the ALJ found as follows:

- At Step One, Lindsay M. had not engaged in substantial gainful activity[4] during the alleged onset date. [Filing No. 9-2 at 22.]

- At Step Two, Lindsay M. "has the following severe impairments: Idiopathic intracranial hypertension (IIH); degenerative disc disease of the lumbar spine with radiculopathy; major depressive disorder; anxiety disorder; posttraumatic stress disorder (PTSD); personality disorder; panic disorder with agoraphobia; and obesity (20 CFR 404.1520(c) and 416.920(c)). [Filing No. 9-2 at 21.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Three, Lindsay M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 9-2 at 22.] As to the "paragraph B" criteria for Listings 12.04, 12.06, 12.08, and 12.15, the ALJ found that Lindsay M. had moderate limitations of concentrating, persisting or maintaining pace. [Filing No. 9-2 at 23.] The ALJ further found "moderate" limitations in understanding, remembering, or applying information; interacting with others, and adapting and managing oneself [Filing No. 9-2 at 23-25.]

- After Step Three but before Step Four, Lindsay M. had the RFC "to perform light work as defined in CFR 404.1567(b) and 416.967(b) except she can lift and/or carry 20 pounds occasionally, and 10 pounds frequently, push or pull is unlimited except for the weights indicated; sit for 6 hours out of an 8-hour workday; stand and/or walk for 2 hours in an 8-hour workday; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. In addition, the claimant is able to understand, carry out, and remember simple, routine, and repetitive tasks. She has the ability to make work-related decisions and sustain concentration on short, simple tasks for two hours at a time over an 8-hour workday. She cannot work at production rate pace or meet strict quota production requirements but can meet all end-of-day goals. She requires a position with set routine and procedures, with few changes during the workday. She can have occasional interactions with supervisors, coworkers, and the public. [Filing No. 9-2 at 26.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Lindsay M.'s RFC, she was unable to perform her past work as a nursing assistant or housekeeper/cleaner. [Filing No. 9-2 at 32.]

- At Step Five, relying on the VE's testimony and considering Lindsay M.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform, such as a final assembler, addressing clerk, and touch-up screener. [Filing No. 9-2 at 33.]

## III.
### DISCUSSION

Lindsay M. argues that the ALJ erred by: (1) failing to create a logical bridge at Step Four; (2) improperly omitting limitations from the RFC assessment; and (3) improperly failing to assess

her subjective symptoms under SSR[5] 16-3p. [Filing No. 9-2 at 2.] The undersigned will consider each of the arguments in turn.

    A.    **State Agency Opinions—Physical Limitations**

Lindsay M. argues that, while the ALJ found the state agency doctors' opinions persuasive, the ALJ did not have the benefit of reviewing additional information that post-dated those opinions. [Filing No. 11 at 6.] The last state agency opinion was dated in September 2020. [Filing No. 9-2 at 6; Filing No. 9-3 at 39-43.] However, Lindsay M. argues that additional treatment notes from after September 2020 show significant degenerative changes in her lumbar spine, radiculopathy, and right ankle (among other issues). [Filing No. 11 at 7.] Because the state agency doctors were unaware of these worsening conditions, they could not account for them. *Id.* As argument goes, if the state doctors knew about the degenerative changes, their opinions (which the ALJ found persuasive) would be reflected in the ALJ's RFC analysis. She says the ALJ failed to create a logical bridge by incorporating the state agency's opinions into the RFC without accounting for the degeneration and radiculopathy shown in the later evidence. In sum, if the ALJ had accounted for the later evidence, the RFC would include greater sitting and walking restrictions. [Filing No. 11 at 10.]

The Commissioner responds that, contrary to Lindsay M.'s argument, the ALJ did account for the evidence received after the state agency's review. The Commissioner identifies the later evidence as an EMG of the lower extremities, an updated MRI of the lumbar spine, and an X-ray of the right ankle. [Filing No. 14 at 7.] First, the Commissioner argues that Lindsay M. was being treated for symptoms related to radiculopathy as early as July 2019. Although the later evidence

---

[5] Social Security Rulings ("SSR") are interpretive rules intended to offer guidance to ALJs and are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *Laurer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

showed an EMG confirming the existence of radiculopathy, the Commissioner argues the later records also showed that "the combined treatment of injections and medicines provided 'significant pain relief,' that her back condition was not sufficiently severe enough to require any kind of surgical intervention, and that she had lost 52 pounds in a relatively short period." [Filing No. 14 at 8.] Next, the Commissioner says that the new MRI results (from October 2020) *were* interpreted by a treating physician. [Filing No. 14 8; Filing No. 9-8 at 176.] The Commissioner argues that the treating physician found they were "similar to the prior study," thus distinguishing Lindsay M.'s argument from the cases she cites. [Filing No. 14 at 9.] Finally, the Commissioner argues Lindsay M. failed to show the right ankle X-ray results (July 2021) were a potentially decisive piece of evidence. [Filing No. 14 at 10.]

In her reply, Lindsay M. goes to great lengths to dispel the Commissioner's argument that the radiculopathy symptoms were accounted for in the records evaluated by the state agency doctors. These records might have addressed shooting leg pain (a symptom of radiculopathy), she says, but the later evidence confirming radiculopathy was potentially decisive and could have supported greater limitations. [Filing No. 19 at 2]. Next, she argues that without the state agency's consideration of the later lumbar spine MRI, the ALJ was left to impermissibly interpret the medical evidence on his own. [Filing No. 19 at 3.] And, while the MRI might not have reflected a new condition, she says the ongoing conditions it reflected were significant when combined with the radiculopathy and severe ankles problems. [Filing No. 19 at 4.] Finally, she addresses the Commissioner's arguments regarding the right ankle X-ray. Lindsay M. says that while the X-ray does not provide functional limitations, it reflects medical findings that should have been translated by a reviewing doctor. [Filing No. 19 at 5-6.]

The ALJ has a basic obligation to develop a full and fair record, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), and must build an accurate and local bridge between the evidence and the result. *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). If the evidence does not support the conclusion, we cannot uphold the decision. *Blakes*, 331 F.3d at 569.

Here, Lindsay M. contends that the ALJ's decision is bereft of the medical findings from three records that were submitted after the state agency's review in September of 2020: 1) an EMG of the lower extremities; (2) an MRI of the lumbar spine; and (3) a right ankle X-ray. The updated records show: a radiculopathy diagnosis (EMG results); degenerative changes of the right ankle with subchrondal sclerosis, cyst formation, and joint space narrowing as well as posterios calcaneal spurs and elevated calcaneal incline angle (right ankle X-ray); and various conditions at L5-S1 (lumbar spine MRI). [Filing No. 9-8 at 176.] The basic question that the applicable case law presents is whether these records constitute new, significant medical diagnoses that could have changed the reviewing physician's opinion. *Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018). We find they do.[6]

First, despite Lindsay M.'s recitement of the highly technical L5-S1 findings, [Filing No. 7], she cannot overcome the fact that the October 2020 MRI was compared to the January 2020 lower spine radiograph and the June 2019 lumbar spine MRI, and the record showed the "[f]indings have been stable compared with the prior study." [Filing No. 9-8 at 176.] In the same results analysis, the "Impression" section notes the L5-S1 results are "similar to the prior study." [Filing No. 9-8 at 177.] All the updated MRI does, which Plaintiff admits, is show "ongoing lumbar abnormalities." [Filing No. 9-8 at 4.] The latest MRI is a far miss from an updated record reflecting

---

[6] The present case is unlike instances where, when deciding whether the Commissioner's final decision was supported by substantial evidence, the Court could not consider new evidence that that was not before the ALJ. *Jirau v. Astraue*, 715 F. Supp.2d 814 9 (N.D. Ill. June 1, 2020).

"significant and new developments," *Moreno*, 882 F.3 at 728, and the new MRI is not noteworthy just because the right ankle X-ray and EMG are potentially significant.[7]

However, the right ankle X-ray and the EMG *are* potentially significant. First, the EMG of Plaintiff's bilateral lower extremities shows a new diagnosis of radiculopathy. The ALJ noted that there was evidence in the record that the consultants did not review (such as pain relief obtained from injections, etc.), however the ALJ does not discuss the radiculopathy diagnosis.[8] Moreover, the ankle X-ray shows degenerative ankle changes and new abnormalities such as sclerosis, cyst formation, calcaneal spurs, and joint space narrowing. [Filing No. 9-8 at 214, Filing No. 9-9 at 50.] It is possible that the new records would not change the stage agency consultants' opinions. However, it is also possible that a medical professional would evaluate these findings as significant, which might change the RFC's limitations for sitting and standing.

Because the right ankle X-ray and EMG present developments that could have changed the reviewing physician's opinion, the undersigned **RECOMMENDS** the Court **REVERSE** and **REMAND** for further proceedings so the state agency consultants can review the additional records.

B. **State Agency Opinions—Mental Health**

Next, Lindsay M. contends that, although the ALJ found the state agency mental health opinions "overall persuasive," those opinions contained key limitations that he erred in omitting. Lindsay M. contends that the state agency's opinion that she could relate to co-workers and

---

[7] Plaintiff argues that the right ankle x-ray and the EMG give the MRI relevance.

[8] The Court acknowledges Defendant's argument that the ALJ's discussion of Plaintiff's shooting leg pain accounts for symptoms of radiculopathy. However, the Court declines to tread into medical territory and guess whether the state agency consultant would view symptoms interchangeably with diagnosis.

supervisors on a "superficial and ongoing basis," contradicted the RFC, which allowed for "occasional interaction" with co-workers, supervisors, and the public. [Filing No. 9-2 at 26, 30; Filing No. 93- at 43.] Lindsay M. argues that occasional contact refers to quantity of time, whereas the state agency doctors had assessed the quality of interactions through their limitation to superficial interactions. Moreover, Lindsay M. argues that, without explanation, the ALJ omitted the state agency doctor's selection of moderate checkbox limitations in attention, concentration, and pace. [Filing No. 9-3 at 41-43.]

The Commissioner argues that Lindsay M. invites the court "to adopt a categorial rule to remand cases where an ALJ does not expressly discuss a checkbox finding in the state agency's opinion forms." [Filing No. 14 at 15.] Although the ALJ did not expressly mention the checkbox limitations, he built a logical bridge between the overall record of Plaintiff's mental impairments and his RFC conclusion. [Filing No. 14 at 14-15.] Finally, the Commissioner cautions against likening Lindsay M. to the Plaintiff in *Decamp v. Berryhill*, 916 F. 3d 671, 675-676 (7th Cir. 2019), who had a tortured history of mental illness including cutting, overdosing, and attempted suicide. [Filing No. 14 at 15.]

In reply, Lindsay M. argues that the Commissioner is wrong; failure to explicitly address the state agency doctors' opinion that Lindsay M. was limited to relating on a superficial and ongoing basis is reversible error. [Filing No. 18 at 6.]

The Court agrees with Lindsay M. In his decision, the ALJ noted that the DDS psychological consultants said claimant can relate on a superficial and ongoing basis with co-workers and supervisors. [Filing No. 9-2 at 30.] The ALJ then, "conclude[ed] that these prior administrative findings are overall persuasive." [Filing No. 9-3 at 30.] However, the ALJ failed to

include the superficiality component into his questioning to the VE, or account for it in the mental RFC.

As courts in this circuit have discussed, "'[o]ccasional contact goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions." *Eveland v. Berryhill*, 2017 WL 3600378, at *5 (N.D. Ind. Aug. 22, 2017) (quoting *Wartak v. Colvin*, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016). *See also* Grazyna C. Kijakazi, 2022 WL 2802336 (N.D. Ill. July 18, 2022) ("the ALJ makes no attempt to explain her basis for limiting Plaintiff to occasional interaction with coworkers rather than superficial interaction.").

In *Eveland*, the ALJ gave considerable weight to state agency consultant's opinion that plaintiff could relate on a superficial and ongoing basis. *Eveland*, 2017 WL 3600378, at *5. And the ALJ did not adopt this restriction, instead limiting Plaintiff to "occasional interactions" with co-workers and supervisors. *Id.* The ALJ's findings in the present case mirror those of the ALJ in *Eveland*.

However, Lindsay M.'s case has a key difference from *Wartak* and *Grazyna* which is worth untangling. In *Wartak* and *Grazyna*, the state agency doctors found moderate checkbox limitations in the claimants' ability to accept instructions and respond appropriately to criticism from supervisors and get along with coworkers without distracting them or exhibiting behavioral extremes. These moderate limitations were buoyed by a narrative limitation as to relating to a superficial basis on an ongoing basis with supervisors and co-workers.

Here, the state agency consultants marked Lindsay M. "not significantly limited" in terms of her ability to accept instructions and respond appropriately to criticism from supervisors and get along with coworkers without distracting them or exhibiting behavioral extremes. In fact, the only moderate checkbox limitations related to interactions with co-workers and supervisors were:

(1) interacting appropriately with the general public; (2) maintaining attention and concentration for extended periods; and (3) completing a normal workday and workweek without interruptions from psychologically based symptoms. [Filing No. 9-3 at 30, 42.] Thus, the ALJ may have believed that the lack of moderate checkbox limitations relating to interaction with supervisors and co-workers did not require him to incorporate the "superficial and ongoing" narrative limitation into the RFC. However, this explanation is not given. By appearing to find the limitation persuasive but failing to adopt it or otherwise explain himself, the ALJ has muddied the waters such that remand is appropriate.

Thus, the RFC's limitation to "occasional interactions" with supervisors and co-workers fails to account for the narrative limitation of "superficial" relations that the ALJ found persuasive. The ALJ failed to build a logical bridge by either adopting a qualitative interaction limitation or briefly explaining why such a limitation was not necessary. The undersigned **RECOMMENDS** the Court **REMAND** for further proceedings.[9]

### C. The ALJ's Analysis of Lindsay M.'s Subjective Symptoms

Lindsay M. goes to great lengths to attempt to show the ALJ erred in assessing her subjective symptoms, taking issue with nearly all the ALJ's characterizations. [Filing No. 11, at 18-22.] However, the ALJ's findings regarding Plaintiff's subjective symptoms are given great deference and overturned only where patently wrong. *Summers v. Colvin*, 864 F.3d 523, 528 (7th Cir. 2017); *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008).

Here, the ALJ appropriately considered the record under the factors included at SSR 16-3, such as Lindsay M.'s daily activities; the location, duration, frequency, and intensity of pain and other symptoms; factors that precipitate and aggravate the symptoms; medications; treatment; and other

---

[9] The undersigned takes no position on the ALJ's treatment of the checkbox limitations in concentration, persistence, and pace.

measures to relieve pain or symptoms. Although he did not credit all of Plaintiff's reported symptoms, he was not required to. *Sawyer v. Colvin*, 512 F. App'x 603, 608 (7th Cir. 2013) ("[c]redibility assessments need not be explicit or particularized to specific testimony."); *Tilley v. Colvin*, No. 1:13-cv-1775, 2015 WL 926178, at *5 (S.D. Ind. Mar. 3, 2015) ("It is *not* necessary that the ALJ recite findings on every factor described in SSR 96–7p, or that he discuss every piece of evidence that might bear on credibility, or that he even specify exactly which of the claimant's statements were not credible.") (emphasis in original).

Having found remand is appropriate for the reasons discussed above and given the great deference the Court affords to the ALJ on issues of subjective evaluation, the Court declines to find that the ALJ committed error in evaluating Plaintiff's subjective symptoms. However, because this case is being remanded for other issues, the ALJ is reminded of their obligation under SSR 16-3 when evaluating subjective statements.

## IV.
### CONCLUSION

For the reasons detailed above, the undersigned **RECOMMENDS** the Court **REVERSE** the ALJ's decision denying Lindsay M.'s benefits and **REMAND** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file timely objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 1/31/2024

*[signature]*
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**